O

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | |
|---|---|
| **JORGE ROSAS; MARY LAMAR LEYENDECKER; and GARY LEYENDECKER,** § § § § | |
| *Plaintiffs*, § § | |
| § | Civil Action No.: 5:06-cv-184 |
| v. § § | |
| **RAYTHEON AIRCRAFT CO.,** § § | |
| *Defendant*. § | |

## **OPINION & ORDER**

Pending before the Court is Defendant Raytheon Aircraft Company's Motion to Transfer this cause to the District of Kansas. [Dkt. No. 2]. Upon due consideration of the filings and the governing law, the Court GRANTS Defendant's Motion.

**I.   PROCEDURAL BACKGROUND AND RELEVANT FACTS**

Since June 2005, Plaintiffs have regularly flown as passengers in an aircraft, hereafter referred to by its serial number "RB-87," manufactured by Defendant Raytheon. [Dkt. No. 1, ¶¶ 4, 6]. Plaintiffs claim that the aircraft is "defective because it wrongfully disperses into the cabin area jet oil fumes which are toxic and infiltrate the pressurized cabin and pilot area of the aircraft." [Dkt. No. 1, ¶ 5]. As frequent passengers who have allegedly suffered from exposure to the fumes, Plaintiffs, on December 28, 2006, filed this personal injury suit in which they advance claims sounding in various forms of negligence and strict products liability.

According to Defendant Raytheon, "Plaintiff Gary Leyendecker is the President and principal stockholder of Rio Bravo [Helicopters]," [Dkt. No. 2, ¶ 2], a third party entity that owns the RB-

87, [Dkt. No. 2, ¶ 1]. Sometime in the first half of 2006, before Plaintiffs filed the instant suit, a dispute began to arise between Defendant Raytheon and Rio Bravo. [Dkt. No. 5-7 (Ex. 6)]. That dispute centered on an incident in which the RB-87 suddenly shed its aft baggage door while in flight. [Dkt. No. 5-7 (Ex. 6), ¶ 3]. Raytheon thereafter beat Rio Bravo to the courthouse, filing suit in Kansas seeking a declaratory judgment that its manufacturing or design of the baggage door was not faulty, and that it was not responsible for damages arising out of various other functional problems with the RB-87 of which Rio Bravo has complained. [Dkt. No. 5-7, ¶ 11].

With the Kansas suit still pending, Rio Bravo filed suit in Texas against Raytheon ("the first Texas suit,") [Civil Action No. 5:06-cv-96], a cause centering on the same facts and issues at the heart of the Kansas suit. Because of the overlap between the two cases, Raytheon requested and obtained an order from the District of Kansas requiring Rio Bravo to stay its suit in the Southern District of Texas pursuant to the so-called "first-to-file rule." [Dkt. No. 2, Ex. A].

On December 8, 2005, days after Rio Bravo's first Texas suit was stayed, Plaintiffs filed the instant suit in their individual capacities in the 341st Judicial District Court, Webb County, Texas. [Dkt. No. 1-5]. On December 28, 2006, Defendant Raytheon removed, [Dkt. No. 1], and immediately filed the Motion to Transfer now before the Court, arguing that under the first-to-file rule, this Court should not entertain this case because the issues presented therein "substantially overlap" with those presented in the still-pending Kansas suit. [Dkt. No. 2].

**II.    DISCUSSION**

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir.

2

1999). The rule is "grounded in principles of comity . . . . The federal courts have long recognized that . . . courts of coordinate jurisdiction and equal rank [should] exercise care to avoid interference with each others' affairs." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

As the parties recognize, and as the above excerpts establish, the threshold inquiry here is whether "the issues raised" in both suits "substantially overlap." The issues need not be identical; "[w]here the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.* at 950-951 (quoting *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)).

Raytheon insists "there are no factual differences between this case and the case in Kansas that could lead the Court to conclude that these cases do not 'substantially overlap,'" [Dkt. No. 7, ¶ 14], because the "central dispute" in both suits is "whether RB-87 was designed and manufactured properly," [Dkt. No. 7, ¶ 11]. Plaintiffs respond by emphasizing that they are not even parties to the Kansas suit, and that the suits involve different theories of recovery. That is, Plaintiffs claim personal injury via inhaling cabin fumes leaked into the passenger cabin due to Raytheon's poor manufacturing. In Kansas, on the other hand, Raytheon seeks a declaration that it is not at fault for such malfunctions, and thereby did not breach any warranties under its sales contract with Rio Bravo. [Dkt. No. 5].

Notwithstanding the very real differences between the two suits, a finding of substantial overlap follows from a faithful focus on the first-to-file rule's primary purpose—the prevention of conflict between judgments of two coequal district courts. *See Save Power*, 121 F.3d at 950 (quoting *TPM Holdings*, 91 F.3d at 4) (directing district courts, in determining whether the

degree of overlap between two suits is "substantial," to consider on a "case by case" basis factors such as the "likelihood of conflict . . . ."). Specifically, the potential for conflict between the judgments of two coequal district courts in the present circumstances is high given the operation of a well-settled legal doctrine neither party discusses: collateral estoppel.

Collateral estoppel, or "issue preclusion," works to "prevent issues of ultimate fact from being relitigated between the same parties in a future lawsuit if those issues have once been determined by a valid and final judgment." *Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005). Thus, as was made clear in *Vines*, preclusion cannot arise unless there exists (1) an identity of issues; and (2) an identity of parties.

Again, in its Kansas Complaint, Raytheon seeks a declaration that it is "not responsible for *any* damages to the defendant . . . claimed by defendant due to [sic] the terms of the limited warranty . . . ." [Dkt. No. 5-7 (Ex. 6), ¶ 11 (emphasis added)]. Although the overwhelming focus of Raytheon's Kansas complaint is on the parties' dispute regarding the aft baggage door, there is no doubt that the relief it seeks is a declaration that the RB-87 is sound in *all* respects per its sales contract with Rio Bravo. More importantly, Rio Bravo has counterclaimed in Kansas, arguing that Raytheon's "*negligence* in the repair and maintenance of the RB-87 resulted in the introduction of fumes within [sic] the aircraft." [6:06-cv-1198, Dkt. No. 48, ¶¶ 32-33 (emphasis added)]. As such, Plaintiffs are incorrect in characterizing the Kansas suit as merely one for contract breach, as this assertion conveniently overlooks Rio Bravo's negligence counterclaims.[1] [6:06-cv-1198, Dkt. No. 48, ¶33 (emphasis added)]. Thus, identity of issues exists.

---

[1] Of course, since both suits are diversity suits, the respective negligence claims rest on different bodies of state tort law. Despite Plaintiffs' focus on this fact, the Court deems it a red herring. While it is true that the "relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings," *Recoveredge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995), the legal standards will be deemed to be "the same" for preclusion purposes so long as they are not "substantially different." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005); *see also De Shazo v. Nations Energy Co. Ltd.*, 2007 U.S. Dist. Lexis 21787 (S.D. Tex. 2007) (finding issue preclusion based on similarity between Canadian and Texas legal standards). There is no

Of course, collateral estoppel will not work to preclude subsequent litigation of an issue unless the party against whom the doctrine is invoked in the second suit was a party to the first. At first blush, it may seem as if identity of parties is lacking between the Kansas suit and the instant dispute—that is, Rio Bravo, and not Plaintiffs, is listed as Raytheon's adversary in the Kansas proceeding. However, "complete identity of all parties is not required . . . ." *Id.* Rather, "the party against whom the collateral estoppel would be applied generally must either have been a party, *or privy to a party*, in the prior litigation." *Id.* (emphasis added). Such privity arises if the party in the prior suit "adequately represented [the second party's] interests in the prior proceeding." *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 983 (5th Cir. 1990) (emphasis added).

As discussed, *supra*, Plaintiffs filed the instant suit only sixteen days after U.S. District Judge George Kazen stayed the first Texas suit per Raytheon's successful invocation of the first-to-file rule in Kansas. [5:06-cv-96, Dkt. No. 22]. It is no surprise that Plaintiff Gary Leyendecker was at the forefront of opposing the stay in the first Texas suit, as he is President of Rio Bravo. [Dkt. No. 5-2 (Ex. 1) at 2]. Indeed, Defendant Raytheon alleges in its Motion to Transfer that Leyendecker is the "principal stockholder of Rio Bravo," [Dkt. No. 2, ¶ 2], an assertion Leyendecker does not challenge in Plaintiffs' Response. Leyendecker's affidavit in the current suit is consistent with Raytheon's claim . . .:

> [t]he Rio Bravo owned airplane has been based and situated in Laredo . . . since its purchase. Most, with few exceptions, of the flights and trips taken in this aircraft originated and ended in Laredo . . . . typically, I, together with my wife . . . would fly out of Laredo to places within the [S]tate of Texas and to the [S]tate of Colorado on both business *and personal trips*.

[Dkt. No. 5-2 (Ex. 1) at 2 (emphasis added)].

---

reason to believe that Texas' and Kansas' legal standards applied in establishing the predicate for negligence, such as the respective burdens of persuasion or definitions of causation, are substantially different.

If there ever was justification for "piercing the corporative veil" for preclusion purposes, the present facts provide it. Given Plaintiff Leyendecker's role in all three suits—and that role cannot be seriously denied—the Court has little doubt that his interest with respect to Raytheon's liability for smoke leakage will be adequately represented in the Kansas suit. It follows that privity of parties exists, thereby establishing identity of parties for collateral estoppel purposes.

The likelihood of inter-district conflict aside, the first-to-file rule also exists to facilitate efficient adjudication of suits sharing overlapping key issues. *See West Gult Maritime Ass'n*, 751 F.2d at 728 (describing the purpose of the rule to include avoiding "the waste of duplication . . . [and] piecemeal resolution of issues that call for a uniform result."). Whether Raytheon's manufacturing or servicing of the aircraft caused the fume leakage may prove to be a highly technical and exhausting inquiry. As such, the concern for efficiency inherent in the first-to-file rule further counsels in favor of transfer.

Lastly, the Court rejects Plaintiffs' argument that "compelling circumstances" compel denial of Defendant's Motion to Transfer.[2] [Dkt. No. 5, ¶ 16].

---

[2] In arguing that transfer would be inappropriate even upon a finding of substantial overlap, Plaintiffs invoke the occasionally recognized exception to the first-to-file rule, which works to deny transfer to a defendant who has filed an anticipatory declaratory judgment suit in another venue for the frowned-upon purpose of preempting the plaintiff's choice of forum. [Dkt. No. 5, ¶¶19-22]; *see*, *e.g.*, *Street v. Smith*, 456 F. Supp. 2d 761, 768 (S.D. Miss. 2006). Plaintiffs argue that this exception applies here because Raytheon filed in the District of Kansas in anticipation, not of Plaintiffs' suit, but of Rio Bravo's first Texas suit. [Dkt. No. 5, ¶¶19-22]. First, Plaintiffs' seeming conflation of the first and second Texas suits further suggests privity between Plaintiffs and Rio Bravo. Second, in making this argument, Plaintiffs' unwittingly illustrate how their case presents this Court with the threat of inter-jurisdictional tension: the District of Kansas, in requiring Rio Bravo to stay its Texas suit, has already concluded that Raytheon did not file its Kansas suit in bad faith, and thus that the anticipatory suit exception is inapplicable. [6:06-cv-1198, Dkt. No. 30]. As such, agreeing with Plaintiffs in this regard would be tantamount to flouting the District of Kansas' previous ruling on the very same issue . . . a ruling that controls by way of collateral estoppel.

### III.     CONCLUSION

The District of Kansas' adjudication of this suit would likely control disposition of Plaintiffs' Texas negligence claim. Thus, an independent adjudication by this Court of the same issues inherent in that claim would be unwise. Since "substantial overlap" between two suits will be found for first-to-file purposes if the simultaneous entertainment of both suits presents the likelihood of conflicting judgments between two coequal district courts, substantial overlap exists here. The question now is what to do about that.

Notwithstanding the District of Kansas' decision to stay the first Texas suit upon a finding of substantial overlap, "the Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 606 (5th Cir. 1999). Thus, "[o]nce the district court [in which the latter suit was filed finds that] the issues might substantially overlap, the proper course of action [is] for the court to transfer the case" to the alternative court, which thereafter determines whether to stay, dismiss, or consolidate. *Id.* (quoting *Save Power*, 121 F.3d at 948). Ironically, however, there is a direct conflict between two coequal Fifth Circuit panels on this matter. *See West Gulf Maritime Asso. v. ILA Deep Sea Local 24, etc.*, 751 F.2d 721, 728-29 n.1 (5th Cir. 1985) (stating that upon a finding of substantial overlap, "it sometimes may be appropriate to transfer the action *or to stay it*." (emphasis added)). However, "when two panel opinions appear in conflict, it is the earlier which controls." *Harvey v. Blake*, 913 F.2d 226, 228 (5th Cir. 1990). The proposition articulated in *Cadle*, which is more oft-repeated and rooted in 1910 Supreme Court precedent, enjoys seniority. *See Mann Mfg. Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) (discussing

*Rickey Land & Cattle Co. v. Miller & Lux*, 218 U.S. 258, 262 (1910)). It follows that this Court does not enjoy the option of staying the suit.

Defendant Raytheon's Motion to Transfer, [Dkt. No. 2], is **GRANTED**. Accordingly, the Court **ORDERS** that this cause be transferred to the United States District Court for the District of Kansas.

IT IS SO ORDERED.

DONE this 21st day of May, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**